I'll come back. Good morning, your honors. May it please the court. Renee Maness on behalf of the defendant below and the appellant Leslie Whittemore. Almost exactly two years ago, Ms. Whittemore and her sister Michelle Gordon were pulled over in a car driven by Michelle Gordon that Michelle had borrowed from one of her boyfriends named Art Turpin. In the car was a substantial amount of stolen mail. At the point in time of their arrest, Michelle Gordon lied about her identity, said she didn't even see the stolen mail in the car, although it was all over the place, said it must have been there before when she took the car from her boyfriend, said she didn't know what on earth was going on with the stolen mail in the car. Leslie Whittemore said, my sister came by my house, she invited me for a ride, I looked in the car, there was stolen mail, my sister has a history of stealing mail, but I was still wanting to go for a ride with her, I went for a ride, she decided to keep stealing mail, I knew she was stealing mail, I was present in the car when she was stealing mail. Subsequently, both Ms. Whittemore and Ms. Gordon were charged with stealing mail. Now interestingly, in the interim, after being picked up stealing mail, Ms. Gordon continued to commit crimes. She attempted to cash stolen checks, she attempted to continue her basic criminal activity. Ms. Whittemore did not engage in any additional crime. Ms. Whittemore did not do anything inappropriate. When it came time to go to trial, Ms. Whittemore remained consistent in her statements, which was, my sister stole the mail, I was physically present, I knew she was stealing mail. However, the district court was very clear that those facts alone did not make Ms. Whittemore guilty of any crime. Ms. Gordon was absolutely critical, therefore, to prove that Ms. Whittemore had committed any crime. Ms. Gordon needed to take the stand and testify that, in fact, Ms. Whittemore was part and parcel of the mail theft. Now, by the time it came time to go to trial, Ms. Gordon had been picked up on all of her subsequent criminal activity, all of her current federal mail theft, and she had given birth to a baby. She desired to stay out of prison. On the state side, she was facing a flat 39 months, because she was still on probation for prior crimes. All of her new criminal activity would give her, under the state guidelines, 39 months with absolutely no ability to be released early. She was facing consecutive sentencing on the federal crimes, and her greatest desire was to stay out of prison. In order to do that, she entered into a deal with the federal government. A good deal. A very good deal. A breathtakingly good deal, in some respects. It's a wonderful deal. Ms. Gordon had a wonderful lawyer, and there is nothing inappropriate in Ms. Gordon having a wonderful lawyer. There is nothing inappropriate in Ms. Gordon attempting to get this deal, and let's hope that Ms. Gordon does manage to change her life around for herself and her young child. What was inappropriate was Ms. Gordon lying on the stand about her deal, and what was inappropriate was Ms. Whittemore being precluded from confronting Ms. Gordon with the record that would prove that she was still lying on the stand. Those lies were critical. Ms. Gordon was staying on the stand that she was getting these wonderful deals because she had turned her life around, was off drugs, and was now cooperating with the government. However, while she sat on the stand, she was specifically asked, has anyone told you that based upon your deal with the government, the government will recommend a sentence that will put you outside the presumptive prison range? Ms. Gordon said, no, that didn't happen. In fact, those were the precise same words, the identical words, that the trial court had used with Ms. Gordon when accepting her plea deal, and telling her, this is a huge benefit. Ms. Gordon refused to admit that she was obtaining such a huge benefit before the jury. Let me stop you there and focus on just what it was she did acknowledge. I'm not sure that it matters with regard to, let me take a step back, the purpose of soliciting this testimony from Ms. Gordon is to demonstrate she's got a real good interest to say what she thinks the government wants her to say, to say things that will incriminate her sister. And exactly the form of the motivation, I'm not sure, matters so much as the fact of the motivation. So that the fact that she might not acknowledge just how good the deal might be, the fact that she might say, I don't know that I'm going to get out altogether. Indeed, in her mind, maybe the additional time that she had to put in for her treatment program was still somehow incarceration. In any event, wasn't it acknowledged by her that she was getting a big benefit, even if she didn't acknowledge the specific form that the benefit might take? There, I believe that she was not fully acknowledging the benefit, and I think that there's an additional critical fact that was sought to be brought out with this evidence, which was that Ms. Gordon was still lying under oath before the jury regarding this crime. When Ms. Gordon was asked, were these words used to you, she said no, and they were. And having the jury know that she was lying under oath before them about this case was a crucial thing. What was she lying about, that she couldn't get probation? No, she was lying, and we quoted the words specifically in our brief, and they're in the excerpts of records at pages 146, and then the lie is shown by comparing that to the excerpts of record at page 37. No one has ever told you that if the government recommends cooperation for you in a downward departure based on presumptive prison range. Gordon, from what I understand, I would be entitled to perhaps a split sentence. Probation in and of itself was never implemented or mentioned to me. No. Let's contrast that with what the court told her. The government will recommend a downward departure of at least 11. Wait a minute. Ms. Mains, please read all of it. You stopped reading. Question. How about probation staying in the treatment center? Were you ever specifically suggested that that could be a possible sentence for you? Answer. Possibly. And that is a probationary sentence without custodial time, comma, for instance, comma, in jail. Question. I believe that it's referred to as home detention. The judge on page ER 132 specifically said, you may show that Gordon understood that these favorable recommendations could produce a guideline range calling for a probationary sentence instead of a prison sentence, and the emphasis is on, quote, could. She understood the favorable recommendations could produce a guideline range calling for probation and not for prison. Now, didn't your client, Whittemore, get everything she wanted on the record through that 403 ruling by the judge when he said, I don't want to get into the guideline measures of how this is done? You can...they got everything you wanted that she could get probation, right? What Ms. Gordon said was that she thought she could get a split sentence, not that she could get a probationary sentence. All right, fine. I've read it. If you and I disagree with it, I'll just keep reading mine. What did she mean by split sentence? Well, it's interesting because the government on their brief refers to what Ms. Gordon got as a split sentence. However, split sentence has a very clear meaning within the meaning of the law. This court stated over a decade ago in United States v. Lattimore that time in a community correction center, even time in home detention, is not custodial time. That's not prison time. You see, she's not likely...she might be becoming an expert on the sentencing guidelines, but she's not likely to be using the terminology in the same way that the court does. And that's why I really posed the question before, and as I look at the whole thing, I still have this sense, I'm not sure that I could say she's lying. I could say she's not being very forthcoming or candid. But in terms of what she understood, I wouldn't be surprised if someone might describe, well, I've got to finish this treatment program and I'm not free to go, come and go as I wish then. So she still thinks of that as being a split sentence, with that being, in effect, the custody part and home detention being something else. The Lettie Owens Center is not custody. If you read her counsel's sentencing memorandum, which is in the ER at 3, he notes she is out of custody at the Lettie Owens Center. The Lettie Owens Center is a home for women with babies and who are pregnant who have drug problems. It's not a community correction center. It is not even home confinement. It's a home to help them. Ms. Gordon clearly got a probationary sentence and allowed to stay for six additional months at the Lettie Owens Center as a condition of that probation. To call that custody is just clearly not within the term of what any court or any case law has ever considered custody. Now, why is it in the specific probation recommendations? As a counsel, I've sought similar wording because it will be paid for by probation if it becomes a condition of probation. But if you read her lawyer's sentencing memorandum, he notes she is not in custody. She is not being forthcoming. If she had been at the Lettie Owens Center, she has nowhere else to go. When she was picked up in March, she was homeless in a car, pregnant, and meth-addicted. She was at the Lettie Owens Center because that was a place that helped her get off drugs and gave her a roof over her head for herself and her baby. It was not custody. She was not being forthcoming. There is no question that if she had been forthcoming, if she had said, I would like probation, I've been told probation is possible not only on this and the state charges. I've been told my counsel's asked for probation in the sentencing memorandum he filed. I certainly hope I get probation. I know that the government's going to recommend the sentence that will be in the probationary range. However, it's all up to the judge. If she had said that, we would not have an issue. She did not say that. Why she didn't say that, I don't know. She obfuscated. She refused to answer directly. She refused to answer... What's indirect about, and that is a probationary sentence without custodial time, for instance, in jail. Answer, I believe, is referred to as home detention. Okay, it is not time in prison. No. You would have the opportunity to be with your baby at that point. I would. And you would not have to give up your baby to say, Nicholas Gordon. No. Did she answer inconsistently? Yes. Were there times when she specifically denied that words that were used to her by the judge were used? Yes. Should I have had the opportunity to confront her with that evidence to show that she was denying being told facts that were told to her by the judge? I believe I certainly should have. May it please the court, Kelly Zusman, appearing on behalf of the United States. One key fact here to keep in mind in analyzing this Confrontation Clause appeal is that Michelle Gordon, the witness that we've been talking about here, who's been accused of lying about the terms of her plea agreement, had not been sentenced at the time Ms. Whittemore was tried. She was facing a potential sentence, and the judge who was going to sentence her was the very same judge who was trying this defendant's case. Was that fact known by the jury? No, it was not. One of the things that really troubles me here is that I really can't figure out, I don't understand the justifications for withholding the ability to confront the witness with what she was told by the court. I don't think the jury has to be told it's the very same judge, and it may be that Judge Brown was conscious of the fact that she was the judge in both, and so held uncomfortable with her own words being trotted out. But that's not something the jury knew and didn't have to be told. And isn't there something compelling about having a witness who squirms and cannot be convinced that she's the judge? The question she's being asked is exactly what the judge told her during the colloquy at a time when you would hope the defendant's paying some degree of attention to what's going on. Why shouldn't the defense be allowed to confront her with the fact that, gee, didn't the judge say exactly that to you? I have a couple of answers for that. The first is that the Supreme Court has said that a defendant is entitled to effective cross-examination, but not cross-examination in any particular means of their choice. So what Judge Brown said to the defendant here was, yes, you can go into the specific terms of this plea agreement. You can go into what this witness expected to receive in terms of the benefit. And what she anticipated her sentence would be. All of that was fair ground. The only thing that was not fair was Judge Brown's own words during the plea colloquy, which was that it was a huge benefit because the concern was there would be an impermissible comment upon the evidence. And I'll tell you, you can come back. I just don't understand what that means. I do not understand how that is a comment upon the evidence. I think it's a comment upon the evidence this way. When the trial judge says, look, this is a huge benefit. This is an extraordinary amount. That's evidence. That's not comment on evidence. The witness is being asked – Gordon is being asked, what did you understand? And her understanding should have come from what the judge told her, irregardless of what the judge might actually do in sentencing. If a judge tells somebody, this is a huge benefit, message received by the person hearing that, huge benefit. But when she testified, Gordon didn't say huge benefit. She squirmed and wiggled and did everything she could to benefit – to evade the possibility that maybe she would be sentenced in real time because of this. So how is it the judge's comment isn't itself evidence? How is it a comment on evidence? It's the judge's opinion about the quality of the government's plea agreement with Ms. Gordon. And what Ms. Gordon – Well, how is that relevant? To the extent that it's relevant here, it's relevant in exactly the way the defendant wants to use it, which is this is a huge benefit. Gordon is motivated. Well, what Michelle Gordon did was entirely consistent with what Judge Brown told her at the time of Ms. Gordon's change of plea. And if you look at ER 116 to 124, Judge Brown spent almost eight pages in exacting detail telling Ms. Gordon that all of the government's recommendations were not binding on her, that the government could recommend whatever they wanted, the defense could recommend whatever they wanted, and she was not bound to follow it. So when Ms. Gordon testified – I mean, Ms. Maines set that up as a possible alternative. She said, well, I've been told this is a possibility, but it's all up to the judge. I don't really know. Well, what we – I mean, I've gone through this several times. Gordon is not candid. She is trying to minimize the notion that she gets some huge deal by ratting out her sister. There are lots of reasons maybe she feels that way, and I don't know that she's consciously trying to help the government. I don't think she cares about anybody other than herself. But she may not want to be real candid about what she's doing with her sister. She doesn't say, yes, I've been told this could be a huge benefit. She doesn't say anything close to that. Well, and she didn't have to. Well, she wanted to tell the truth, she did, because that's what the judge told her. Well, the judge never told her she was going to get straight probation. But the judge told her this is a huge benefit, and I have to assume the judge was doing that so she would get Gordon to take seriously the obligation she had as part of this agreement. True. And so it's hard, because Judge Brown is wearing two different hats. And in the Gordon case, she's trying to impress upon Gordon, take seriously what you're being told here. And over here in the Whittemore trial, she's trying to close the door to this. But Gordon's the key witness, and what Gordon hears and understands is very much relevant in the Whittemore trial. And I can't figure out why it is that Whittemore shouldn't be allowed to use that. That's because the territory was covered exhaustively. And I turn you to this court's decision in United States v. Larson, and that was where Judge O'Scanlan said, so long as the jury is apprised of the fact that the witness expects to receive a reduced sentence, that's all it takes. The quantum of the benefit is of slight probative value. That's what Judge O'Scanlan said. This jury knew this.  testimony. This jury knew that Ms. Gordon expected to have a reduction in her guideline range, that it was solely up to the government to decide if she had fulfilled the cooperation agreement. That Gordon had to testify in order to get the reduction. That straight probation was possible, but up to the judge, that she would perhaps receive a split sentence, which is precisely what she got. She fell within zone B of the guideline range, which requires that she serve some portion during her probationary sentence, either in home detention, community treatment, or prison, which is what happened. Now keep in mind also that at the time Ms. Gordon entered her guilty plea, no one knew exactly where her sentencing range was going to be. You can see from the government's presentation that she, it could well have been a category six criminal offender, which may have taken her out of the zone B consideration. Her own attorney said, well I think it's probably a category three or maybe a four. But when Michelle Gordon testified, no one knew with any certainty what her sentence was going to be. The questions that Judge Brown permitted were entirely consistent with what the judge did in United States versus Larson, that this court held was permissible. There was no confrontation clause violation here, because the defendant was for Michelle Gordon's testimony. You know, the difficulty with your argument, as we see the case, as the case is posited, not as we see it, as in fact it is posited. She wasn't asked what her sentence was going to be. She was asked what did she understand would happen. And she didn't answer that question, did she? Judge Ferris, I believe she did. And it's at ER 144 to 147. She was asked, question, do you understand that the government's recommendation could bring you into a range where you might get a probationary sentence, correct? Answer, it could possibly, but it's up to the judge. That's an answer, and that answer is consistent with what Judge Brown told her. And if you lay out ER 144 to 147, which was the cross-examination of Michelle Gordon, when she entered her change of plea, the two match. But 116 to what? To 124. I was on that Larson panel, and as a matter of fact, here, a great deal more of the difference between the possible sentence and the actual sentence was put into evidence than was allowed in the Larson case. This one, here, the difference between what she could have gotten and probationary sentence was put before the jury. In Larson, the difference in the years between what the witness could have gotten and what she did get, or he in that case, was not brought out. Well, and that's why I think this case is, Larson is really dispositive. And if you contrast it against Judge Villa, your decision in Fowler, where the defendant was cut off completely from asking any questions about prior allegations of abuse that had been found to be unsubstantiated. We simply don't have that here. Every possible avenue of motivation for Michelle Gordon's testimony was fully explored. And fully explored during the closing argument. I just think there's no question that Miss Whittemore received a fair trial. There was no violation of her confrontation clause rights here, and the conviction should be affirmed. Thank you. We'll give you a minute for rebuttal. Larson required a determination that some legitimate government interest precluded admission of the evidence. The legitimate government interest in Larson was the fact that one witness faced a life sentence that, quote, may have strongly biased the jury against the conviction. I do not see a single legitimate government interest in not confronting Miss Gordon with what was given to her by the judge at the time of her plea. Well, the judge cited section 403 as a reason why he was not going to allow that testimony. Isn't that right? What was the basis for him saying that? More prejudicial than probative. The question and motivation of a government's witness under Davis versus Alaska is always relevant. I don't see any prejudice. And the only way to properly set the context, I'm reading from 131, line eight. And the only way to properly set the context would be literally to engage in a training course on sentencing guideline law. The burden of which is far outside the scope of this lawsuit. So under rule 403, to the extent the actual words may be relevant, they're unduly prejudicial and carry with them an untenable risk of mistrial. Instead, you may do the following, and then we all know what happened. So the legitimate governmental interest was the refusal to allow the jury to be confused by the sentencing guideline law. Is there something wrong with that? This court stated in the Schweitzer case that sentencing guideline law is not so complicated that juries can't be informed of some basics in order to put it in context. And it seems to me that the words used of huge benefit outside presumptive prison range just are not that complicated. They wouldn't need a discourse on sentencing guideline law for prison range, those were the words that we wanted. Does it pose any problem for you that somebody told her, as you know they always do, that it's up to the judge. And she concluded quite often, as the questions were put to her, yes, x, y, z, and so forth, but it's up to the judge. So she, and she hadn't been sentenced. I gather there's something that you wanted to do that you were precluded from doing. And what were you, what was, I recognize that you wanted her to, to, to, you wanted to read what the court had said, and then have her either admit or deny that that's what the court had said. But you weren't permitted to do it, and by not being permitted to do it, what did you lose in this case other than, other than that fact? I lost two things, Your Honor. First, we did use the words that the court had said and did, and asked her if anyone had ever told her these facts. She denied it. I lost the opportunity to confront her with that lie under oath on the stand. Second, I lost a clear admission from her that she had been told probation was in her sentencing memorandum, and that is what she wanted. This woman did not get a split sentence. Look at the ER-52, she got probation. Lettie Owens is not community confinement. See, that's an after the fact. At the time she was testifying, we have to look at this record. Correct. She didn't have it at that time. And, and all we want to. So after the fact, you may be right, but at that time, she only had a probability, and she had been told, and she repeated. It's up to the judge. The problem that, that I can understand your, your concern. You think the, the, the, the, the, the, the bigger offender walked away. But what we have to look at is, is whether or not your client had a fair trial. And what precluded her from having a fair trial? Because she didn't have the ability to confront Ms. Gordon about the benefit of her plea, and about her lies on the stand. That's what it boils down to. We don't know what the benefit of a plea was going to be. What she expected is the benefit of her plea. And if you look at the Larson case, I think you will see the critical distinction of the prejudice to the government in the life sentence. And I think you will also see that the witness testified truthfully, honestly. She was pregnant, she wanted to get out of prison, she wanted to avoid it. She hoped the government would help her do that. I think, don't you think you got that before the court? I don't believe we did. Well, she, I didn't see her, and I don't know, but I expect a pregnancy was not a secret, was it? Oh, certainly, the fact that she was, had just recently given birth, and was. Yeah. Was there, yes. That was pretty much before the court. But the fact that her goal was probation, I don't think that was ever fully admitted by her. Thank you, Your Honors. Thank you. Thank both counsel for a very well argued case. The case is submitted. We'll take a five minute recess, and then return to hear the last two cases for the morning.
judges: Farris, Clifton, Bea